## ANIMARIUM CO. v. FILLOON.

(Circuit Court, S. D. Iowa, C. D. December 18, 1899.)

PATENTS—VALIDITY—THE OXYDONOR.

The Sanche patent, No. 587,237, for a device known as the "Oxydonor," an appliance for use in treatment for disease, considered in a suit for its infringement, and the evidence adduced in its support *held* insufficient to conclusively establish its validity, or to show that the device is in fact valuable or useful, in such sense as to entitle it to the protection of a court of equity.

This was a suit in equity for infringement of a patent and trademarks. On final hearing.

Thornton & Chancellor, E. J. Hill, and Dudley & Coffin, for complainant.

Evans & Adams, L. H. Gilmore, and Frank P. Blair, for defendant.

SHIRAS, District Judge. From the evidence submitted in this case, it appears that the complainant, the Animarium Company, is a corporation created under the laws of the state of New York, and is engaged in the business of manufacturing and selling a device known as the "Oxydonor," which it is claimed is the invention of Dr. Hercules Sanche, and is covered by letters patent issued by the patent office of the United States, which patents, by assignment, have become the property of the complainant corporation. It also appears that, in connection with the sale of the Oxydonor, certain trademarks, duly registered in the patent office by Dr. Sanche, and by him assigned to the complainant company, were used, and have acquired great value in advertising the device to which they apply. It is further shown that the defendant, at Des Moines, Iowa, engaged in the sale of the Oxydonor, and, describing himself as the agent for the

sale of that device, he advertised it in the newspapers, and issued circulars in which he made use of the trade-marks owned by the complainant. After a time a rival device, called by the name of the "Oxygenor," or "Oxygenor King," made its appearance; and the defendant undertook its sale, advertising it for a time in connection with the Oxydonor; and, practically, he made use of the literature, so called, that he had issued in connection with the sale of the Oxydonor, to aid in selling the Oxygenor, and he endeavored to supplant the former device by the latter in his sales to his agents and customers. Thereupon the present suit in equity was brought; it being claimed on behalf of complainant that the Oxygenor was an infringement upon the letters patent which covered the device known as the "Oxydonor," and that the defendant, in selling the Oxygenor, pirated the trade-marks associated with the Oxydonor, thereby misleading the public and injuring the complainant.

So far as the evidence in this case bears upon the point, it justifies the finding that the Oxygenor is an infringement upon the Oxydonor, and that the defendant, in endeavoring to supplant the latter with the former instrument in supplying his customers, has made a misuse of the trade-marks owned by the complainant. In argument, counsel for the defendant have largely concentrated their efforts in support of the propositions that patent No. 587,237, dated July 27, 1897, is void on its face, and that the device known as the "Oxydonor" is in fact a fraud of such a character that a court of equity will not give it recognition. This is a line of defense which certainly does not place the defendant in a very enviable position, as it appears that he has sold several thousand of the Oxydonors, and is now seeking to supplant the same with the Oxygenor, which he claims is an improvement upon the other device; yet in cases of this kind it is well settled that the complainant cannot obtain relief, no matter what the shortcomings of the defendant may be, if it appears that the device for which he seeks protection is not one of value, or if by means thereof he is working a fraud upon the public. I have, with some care, read and re-read letters patent No. 587,237, in connection with the testimony of Dr. Sanche, and the statements contained in the pamphlets which are delivered with the Oxydonors when sold; and I must confess my inability to understand what it is that the so-called inventor relies upon as the meritorious part of his patented device. In the specifications of the patent, he apparently places reliance on producing "an electric tension in the body contrary to that which superinduced the disease"; but, in naming and describing the Oxydonor, he seems to rely on the curative properties of oxygen, claiming that the device enables the body to which it is attached to absorb oxygen from the air. Yet further in his evidence he says:

"The therapeutic effect of the Oxydonor is too long for explanation here. It is about half answered in a twelve hundred page book, which I will make you a present of when published. I cannot give you any fact relating to its therapeutic effect, because that cannot be chewed down into a single answer. It cures everything. Its effect depends upon the user, and not upon me."

He further states that he does not consider the Oxydonor as a therapeutic agent; that it administers nothing to the human body

when in use; that it carries out the principle of 'diaduction; that "diaduction" "means a connection in life, or between living bodies and inanimate things, congenerous to the connection between electrified bodies." As Dr. Sanche testifies that the principle of diaduction, of which he claims to be the discoverer, is not yet recognized in science, and as he refers for a description thereof to his book of 1,200 pages, which has not yet been published, the court would seem to be justified in refusing to give judicial recognition to this possible new principle until its existence and attributes are more fully recognized and established in the medical and scientific worlds. On the other hand, the claim is made, and finds support in the testimony of the defendant, that many thousands of the Oxydonors have been sold in Iowa and adjacent states, and have produced beneficial results, although the testimony of persons purchasing the device and putting it to use is wanting. It appears that there are other cases brought by the present complainant in this and other jurisdictions to protect its rights under the patent and trade-marks declared upon in the present bill. and it may be that in these cases more evidence upon the vital points involved will be adduced. Under these circumstances, in the present case the court will not attempt to reach a final conclusion upon the points involved, but will confine its conclusion to the holding that the complainant has failed to conclusively establish the validity of letters patent No. 587,237, or to show that the device known as the "Oxydonor" is in fact valuable or useful, in such sense as to justify a court of equity in granting protection thereto; it being open to complainant, if the validity of the patent and the usefulness of the device be properly established in other cases, to file a petition for rehearing in this case. From this holding it follows that the injunction and accounting prayed for must be refused, and each party is adjudged to pay his own costs.